UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DANIEL SCHREMP,

        Plaintiff,

v.                                                       Case No. 11-C-590

LANGLADE COUNTY,

        Defendant.

---

**ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

On June 20, 2011, Plaintiff Daniel Schremp brought this action against Defendant Langlade County, Wisconsin (the County) seeking to recover for alleged violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq*. Before me now is the County's motion for partial summary judgment (ECF No. 12.) The County contends it is entitled to summary judgment on Plaintiff's first claim for relief[1]: *i.e.*, that it did not willfully fail to pay Plaintiff for hours worked, pursuant to the FLSA. Plaintiff has also asserted a claim for retaliatory discharge which is not at issue. For the reasons discussed herein, the County's motion will be granted.

**I. Background**

Plaintiff is a former employee of the County. He worked as the maintenance supervisor for the County's maintenance department from 1979 until his termination in 2010. (Def. Prop. Findings

---

[1] (Compl. ¶¶ 28–38.)

of Fact, "DPFF," ECF No. 12-1 ¶¶ 5, 6.) Throughout his employment Plaintiff was supervised by the County's Public Property Committee and his regular hours of work were Monday through Friday from 6:00 a.m. until 2:30 p.m. (*Id.* ¶¶ 7,13.)

Plaintiff contends he performed work outside the bounds of his normal work schedule and that members of the County's Board of Supervisors were aware of this. (Br. In Op., ECF No. 18 at 2.) For instance, Plaintiff alleges he had to attend to maintenance issues at the county fairgrounds outside of his regularly scheduled hours. (*Id.* at 2.) Plaintiff's best estimate of the amount of time he worked that was not recorded on his timesheet is two to three hours per week. (DPFF ¶ 22.) Plaintiff alleges he worked extra hours by responding to maintenance calls after hours and by attending Public Property Committee meetings. The issue regarding payment for the Public Property Committee meetings appears to have been resolved,[2] and what remains is the time Plaintiff alleges he worked in responding to maintenance calls after hours.

## II. Analysis

Under the Federal Rules of Civil Procedure, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a

---

[2] After this lawsuit was filed, the County determined Plaintiff may not have been compensated for the time spent attending Public Property Committee meetings over the past several years. (Def. Reply to PFOF, ECF No. 22 ¶ 17.) The County went through the minutes of those meetings to determine the length of the meetings and then reviewed payroll records to determine whether Plaintiff worked in excess of forty hours during each of the time periods in which he attended one of the meetings. (*Id.*) Based on that review, the County determined that Plaintiff was likely entitled to additional compensation of $1,268.02 for time spent attending Public Property Committee meetings. (*Id.*) A check in that amount and an accounting of the hours worked was issued to Plaintiff on June 14, 2012. (*Id.*)

2

matter of law. Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The FLSA requires employers to pay overtime to certain employees who work more than 40 hours in a work week. 29 U.S.C. § 207(a). The employee bears the burden of proving that she performed overtime work for which she was not properly compensated. *Anderson v. Mt. Clemens*, 328 U.S. 680, 686–87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), superseded on other grounds by statute, Portal–to–Portal Act of 1947, 29 U.S.C. §§ 251–262. The employer bears the burden to establish that an exemption from the FLSA applies. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 370 (7th Cir. 2005).

To establish liability under the FLSA on a claim of unpaid wages, a plaintiff must prove that she performed the work *and* that the employer had actual or constructive knowledge of the work. *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 177 (7th Cir. 2011). The FLSA imposes an obligation on the employer "to exercise its control and see that the work is not performed if it does not want it to be performed." *See* 29 C.F.R. § 785.13. The employer "cannot sit back and accept the benefits without compensating for them." *Id.* "The employer's duty arises even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours." *Kellar*, 664 F.3d at 177 (citations omitted). The mere promulgation of a rule against overtime work is not enough. 29 C.F.R. § 785.13. Nor does the fact

3

that the employee performed the work voluntarily necessarily take her claim outside of the FLSA. 29 C.F.R. § 785.11. However, the FLSA stops short of requiring the employer to pay for work it did not know about and had no reason to know about. *See* 29 U.S.C. § 203(g) ( "'Employ' includes to suffer or permit to work."); *Reich v. U.S. Dep't of Conservation & Natural Res., State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994)("[A]n employer's knowledge is measured in accordance with his duty . . . to inquire into the conditions prevailing in his business. . . . [A] court need only inquire whether . . . [the employer] had the opportunity through reasonable diligence to acquire knowledge." (internal quotation marks and citations omitted)); 29 C.F.R. § 785.11 ("The employer knows or has reason to believe that he is continuing to work.").

In line with these requirements, the FLSA imposes an obligation on employers to maintain records of hours worked each workday and total hours worked each workweek. *See* 29 U.S.C. § 211(c); 29 C.F.R. § 516.2(a); *Skelton v. Am. Intercontinental Univ. Online*, 382 F. Supp. 2d 1068, 1074 (N.D. Ill 2005). Nevertheless, employers have the right to require employees to keep track of their work time and where an employee elects to under-report his or her work time, the employer is not liable for the failure to pay unreported overtime under the FLSA. *See Walling v. Woodruff*, 49 F. Supp. 52, 56 (C.C. Ga. 1942) ("An employer does not violate the act or the regulation by relying in good faith upon employees to keep and report their own time and by using the record so made as the record of time required by the regulation, if neither the employer or his agents do or say anything to cause the employees to keep an incorrect record."); *Forrester v. Roth's IGA Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (appellate court affirmed the grant of summary judgment to the employer because the employee turned in timesheets which did not include the overtime hours and the employee did not demonstrate that the employer should have known that the employee

4

worked more hours than claimed on her timesheets); *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972) (finding that employee was estopped from claiming that she worked more hours than she claimed on her timesheets); *Newton v. City of Henderson*, 47 F.3d 746, 748–49 (5th Cir. 1995) (reversing FLSA award based on constructive knowledge where employer paid employee based on employee completed timesheets); *Davis v. Food Lion*, 792 F.2d 1274, 1277–78 (4th Cir. 1986) (affirming judgment for employer where employee falsified time records to under-report time).

This is not to say an employer's reliance on an employee's timesheets is always reasonable. For instance, in *Skelton*, employees were repeatedly instructed to only report forty hours per week on their timesheets, despite the number of hours actually worked, and if employees reported overtime, they were required to change their timesheets before they were submitted to the employer. *Skelton*, 382 F. Supp. 2d at 1072. In such cases, the district court noted, the employer cannot hide behind a policy of having employees keep their own time to avoid compensating the employees for all overtime hours worked. *Skelton*, 382 F. Supp. 2d at 1072; *see also Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 314–15 (7th Cir. 1986). In such cases it makes sense that the employer should remain liable for the unpaid wages. However, "where the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of [the FLSA]." *Harvill v. Westward Communications, LLC*, 433 F.3d 428, 441 (5th Cir. 2008).

In this case, there is no evidence to suggest the County had any knowledge of Plaintiff's alleged overtime work. Plaintiff does not allege he was ever told by any County Board Supervisor or management representatives of the County that he was not allowed to work overtime or that he

5

should not report all of his work hours on his timesheets. Although the Maintenance Department was only budgeted for a certain amount of overtime each year, Plaintiff had the ability to request more money if necessary. (Def. Reply to PFOF ¶ 31.) Indeed, County Board Supervisor George Bornemann testified County departments generally have the ability to transfer certain funds in order to cover unanticipated overtime. (*Id.*) Such funds were available for transfer during Plaintiff's tenure as the Maintenance Supervisor for Langlade County. (*Id.*)

Instead, the County had no reason to suspect Plaintiff was not accurately reporting his time. Where an employee maintains time records and there is no indication that the employer instructed the employee not to accurately report his time, the accurate time records will establish the amount of damages, and the general rule that precludes recovery of uncertain or speculative damages is appropriate. *Brown v. Family Dollar Stores of In.*, 534 F.3d 593, 595 (7th Cir. 2008). Here, the County maintained a policy and practice of requiring employees to submit timesheets in which they certified that the information on the timesheets was true and correct. (Pl. Prop. Findings of Fact, "PFOF," ECF No. 19 ¶ 9.) Plaintiff testified in his deposition that there were no documents showing the additional hours that he allegedly worked for the County.[3] (Def. Reply to PFOF ¶ 24.) As such, the County had no indication Plaintiff was not accurately reporting his time.

Nonetheless, Plaintiff asserts, without any particulars or supporting documentation, that he worked an average of three hours per week outside his regular working hours. (PFOF ¶ 18.) This

---

[3] Plaintiff attempts to argue he has cell phone records to support his claim for additional compensation. However, he conceded that in responding to cell phone calls, it was often unclear whether he was working for the County or for one of the many clubs for which he performed charity work. (PFOF ¶ 25.) Some of this additional time was even recorded on his time sheets and paid by the County. (*Id.* ¶ 23.) Therefore, cell phone records would not provide an accurate accounting of hours actually worked for the County.

6

was allegedly comprised of time attending Public Property Committee meetings and attending to maintenance issues at the County fairgrounds outside his regularly scheduled hours.[4] (*Id.* ¶¶ 35–36.) But this estimate of additional time is purely speculative. A mere averment of hours worked does not constitute definite and certain evidence of hours worked. *See Rose v. Digital Convergence, Inc.*, 2001 WL 327843 (D. Tex. 2001) (an averment by an employee that she worked an average of 50 hours per week insufficient to withstand a motion for summary judgment); *see also Harvill*, 443 F.3d at 441 (granting summary judgment for the employer because litigant's assertion that she worked 210 hours of unpaid overtime, without providing any evidence that she actually worked the hours that she alleged, was insufficient to create a genuine issue of material fact). In light of the timesheets Plaintiff submitted, which he verified to be true and correct, an unsupported averment that he worked on average three hours per week outside his regular working hours is insufficient to withstand summary judgment.

Finally, Plaintiff seeks to rely upon the testimony of several County Board Supervisors who testified that they were aware that Plaintiff sometimes performed work outside his regularly scheduled work hours. (*See* PFOF ¶¶ 37, 40, 41, 42, 43, 44, 47). The fact that Plaintiff sometimes performed work outside his regularly scheduled work hours, however, does not mean that the County Board Supervisors knew that he was not being *compensated* for such time. *See Darrikhuma v. Southland Corp.*, 975 F. Supp. 778 (D. Md. 1997) (noting the fact that supervisors saw employee working on the weekends in no way showed that supervisor knew plaintiff was working off the clock). Indeed, many of the County Board Supervisors even believed Plaintiff was an exempt

---

[4] As discussed above, the hours spent attending Public Property Committee meetings is no longer an issue, as Plaintiff has been fully compensated for such time. (Def. Reply to PFOF ¶ 17).

salaried employee. (Def. Reply to PFOF ¶ 26.) The fact that he sometimes worked after hours was also insignificant, as Plaintiff acknowledged that he sometimes reported his overtime work on his timesheets and sometimes he allegedly did not. (PFOF ¶ 23.)

The only two Board Sufpervisors who are alleged to have knowledge that Plaintiff was not being compensated for all of his work time are James Jansen and Michael Klimoski. (*Id.* ¶¶ 38–39, 45.) Supervisor Jansen testified Plaintiff told him back in 1998 or 1999 that he had volunteered his time when he came down and spent a few minutes looking at a toilet. (Def. Reply to PFOF ¶ 26.) Supervisor Jansen thought this was permissible. (*Id.*) This was the only incident of which Supervisor Jansen was aware that Plaintiff had not been paid for time worked for the County. (*Id.*) The fact that Supervisor Jansen had been told Plaintiff had not been paid for a few minutes of work back in 1998 or 1999 is insufficient to demonstrate that he or the County knew that Plaintiff was not being accurately paid for all hours worked. Indeed, the *de minimis* doctrine allows employers to disregard otherwise compensable work when only a few seconds or minutes of work beyond the scheduled working hours are involved. *Kellar*, 664 F.3d at 176; *Singh v. City of New York*, 524 F.3d 361, 370 (2d Cir. 2008). The other Board Supervisor who according to Plaintiff knew that he was not being compensated for all hours worked was Supervisor Michael Klimoski. Supervisor Klimoski testified that he really did not know. He indicated that [he] did not think Plaintiff was reporting all of the hours worked outside his regular work hours, but [he] never saw the time cards. (Def. Reply to PFOF ¶ 26). Also, it is unclear from his testimony whether this was a belief he held while Plaintiff was employed by the County or whether it was something that he learned during the course of this lawsuit. (*Id.*) Either way, such speculative and uncertain testimony is insufficient, as a matter of law, to establish that the County had actual or constructive knowledge that Plaintiff

8

was not reporting all of his hours worked outside his regularly scheduled work day. There is accordingly no genuine issue of material fact remaining; no evidence suggests the County knew or had reason to know about Plaintiff's extra hours.

## III. Conclusion

Plaintiff asserts, without any supporting material or documentation, that he worked a total of 468 hours for which he has not been compensated. He also contends that two County Board supervisors knew that he worked outside his regular working hours for which he was not paid. However, a review of the testimony of these two individuals shows that they did not have any actual or constructive knowledge of uncompensated work time during the relevant time period. Plaintiff never alleged that he was instructed by anyone to falsify his time cards or to not report all of the hours that he actually worked. An employer has no obligation to pay for work it did not know about and had no reason to know about. The record demonstrates there is no genuine issue of material fact remaining. The County did not know and had no reason to know about the extra hours Plaintiff allegedly worked. Accordingly, the County's motion for summary judgment (ECF No. 12) is **GRANTED**. The Clerk is directed to set this matter on the Court's calendar for a Rule 16 telephone conference to discuss further scheduling.

**SO ORDERED** this   31st   day of July, 2012.

                                          s/ William C. Griesbach
                                          William C. Griesbach
                                          United States District Judge